UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PETER MORSEA,

            Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

            Defendant.

No. 2:14-cv-1219-KJN

<u>ORDER</u>

       Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from May 1, 2010, plaintiff's alleged disability onset date, through March 31, 2011, the date plaintiff was last insured.  (ECF No. 14.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment.  (ECF No. 15.)  Thereafter, plaintiff filed a reply brief. (ECF No. 16.)

////

---

[1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF Nos. 8, 10.)

1

For the reasons that follow, the court denies plaintiff's motion for summary judgment, grants the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

## I.  BACKGROUND

Plaintiff was born on August 16, 1959, has a high school education, and previously worked as a journeyman pressman and plumber.[2]  (Administrative Transcript ("AT") 45-49.)  On April 22, 2013, plaintiff applied for DIB, alleging disability beginning May 1, 2010.  (AT 14, 136-38.)  On May 20, 2013, the Commissioner determined that plaintiff was not disabled.  (AT 14.)  Upon plaintiff's request for reconsideration, the determination was affirmed on August 7, 2013.  (AT 14.)  Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on January 15, 2014, and at which plaintiff (represented by counsel) and a Vocational Expert ("VE") testified.  (AT 14, 37-76.)

In a decision dated January 31, 2014, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from May 1, 2010, plaintiff's alleged disability onset date, through March 31, 2011, the date last insured.  (AT 14-20.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on April 3, 2014.  (AT 1-6.)  Thereafter, plaintiff filed this action in federal district court on May 19, 2014, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

## II.  ISSUES PRESENTED

Plaintiff raises the following issues:  (1) whether the ALJ failed to find plaintiff's medically determinable impairments of cirrhosis of the liver and chronic obstructive pulmonary disease ("COPD") to be "severe" impairments at step two; (2) whether the ALJ failed to fully develop the record; and (3) whether the ALJ improperly assessed plaintiff's subjective testimony regarding the severity of the functional limitations caused by his impairments.

////

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

III.     LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.     DISCUSSION

A.     Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[3]  At the First Step, the ALJ concluded that plaintiff did not

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program.  42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled.  If not, proceed to step four.

Step four:  Is the claimant capable of performing his past relevant work?  If so, the

1   engage in substantial gainful activity during the period between May 1, 2010, plaintiff's alleged

2   disability onset date, and March 31, 2011, the date plaintiff was last insured.  (AT 16.)  At Step

3   Two, the ALJ determined that plaintiff had medically determinable impairments in the form of

4   cirrhosis of the liver and COPD, but that such impairments were not sufficiently "severe" during

5   the relevant period.  (Id. at 16, 19.)  At Step Three, the ALJ determined that, through the date last

6   insured, plaintiff did not have an impairment or combination of impairments that meet or

7   medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id. at 16.)

8   The ALJ further noted that while plaintiff was diagnosed with supraglotic laryngeal cancer in

9   January of 2013, the medical record does not contain any objective tests or findings, medical

10  imageries or diagnoses indicating that plaintiff had such cancer during the relevant period.  (Id. at

11  20.)  Because the ALJ found that plaintiff's impairments were non-severe and did not meet or

12  medically equal a listing, he concluded that plaintiff was not under a disability from May 1, 2010,

13  the alleged onset date, through March 31, 2011, the date last insured.  (Id.)

14        B.      Plaintiff's Substantive Challenges to the Commissioner's Determinations

15              1.      *The ALJ did not Err in Finding that Plaintiff's Cirrhosis of the Liver and*

16                    *COPD were not "Severe" Impairments at Step Two*

17        First, plaintiff argues that the ALJ erred at step two by finding plaintiff's medically

18  determinable impairments of cirrhosis of the liver and COPD not "severe."  Specifically, plaintiff

19  asserts that the ALJ's determinations were not supported by substantial evidence from the

20  medical record because the record contains medical evidence of diagnoses of these impairments.

21  Plaintiff further argues that the fact that plaintiff was prescribed an oxygen tank for continuous

22        claimant is not disabled.  If not, proceed to step five.

23
24        Step five:  Does the claimant have the residual functional capacity to perform any
          other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

25  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

26        The claimant bears the burden of proof in the first four steps of the sequential evaluation

27  process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
    evaluation process proceeds to step five.  Id.

28

1  use during the entire relevant period shows that plaintiff was so functionally limited that he was

2  unable to perform any work, therefore undermining the ALJ's step two determination.

3        An impairment is "not severe" only if it "would have no more than a minimal effect on an

4  individual's ability to work, even if the individual's age, education, or work experience were

5  specifically considered." SSR 85-28. The purpose of step two is to identify claimants whose

6  medical impairment is so slight that it is unlikely they would be disabled even if age, education,

7  and experience were taken into account. Bowen v. Yuckert, 482 U.S. 137 (1987). "The step-two

8  inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80

9  F.3d 1273, 1290 (9th Cir. 1996); see also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir.

10  2001). Impairments must be considered in combination in assessing severity. 20 C.F.R. §

11  404.1523. The burden is on the plaintiff to establish the existence of "severe" impairments at step

12  two of the sequential evaluation. See Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998)

13        Here, plaintiff's treating records from the relevant span of time indicate that plaintiff's

14  cirrhosis of the liver and COPD did not have more than a minimal effect on plaintiff's ability to

15  work. Just prior to the relevant time period, in early April of 2010, plaintiff experienced an acute

16  episode of stomach pain and was admitted to emergency care for cirrhosis, from where plaintiff

17  was discharged in improved condition with a recommendation that he use an oxygen tank "at all

18  times" and to cease using tobacco and alcohol. (AT 396-97.) In the months after this incident,

19  and throughout the relevant period, plaintiff's physicians generally noted that plaintiff had

20  cirrhosis of the liver and a history of COPD, but that such conditions were well controlled and

21  that plaintiff's overall condition was improving. (AT 369 (noting cirrhosis as "stable"), 370

22  (stating that plaintiff was "much improved" with medication and noting "COPD – improved."),

23  374 (noting that plaintiff had "clear" lungs). While plaintiff's treating records from the relevant

24  period indicate that plaintiff was diagnosed with cirrhosis of the liver and COPD, they do not

25  provide any specific limitations related to those, or any other, conditions. The mere fact that

26  plaintiff was diagnosed with such conditions is, by itself, insufficient to demonstrate that they

27  were "severe" for step two purposes. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997)

28  (citing Yuckert, 482 U.S. at 153) ("[T]he claimant must show more than the mere presence of a

1    condition or ailment."); see also Mahan v. Colvin, 2014 WL 1878915, at *2 (C.D. Cal. May 12,

2    2014) ("[A] mere diagnosis does not establish a severe impairment."); Stoddard v. Astrue, 2009

3    WL 203034, at *11 (C.D. Cal. July 8, 2009) ("[T]he mere diagnosis of a disorder, without more,

4    is not sufficient to show the existence of a severe impairment.").  Accordingly, the objective

5    medical evidence in the record substantially supports the ALJ's determination that plaintiff's

6    impairments did not have more than a minimal impact on plaintiff's ability to perform work-

7    related activities.

8        Plaintiff also contends that the fact that he was placed on an oxygen tank for the entirety

9    of the relevant time span demonstrates that he was unable to work because the vocational expert

10   testified at the administrative hearing that most employers would not tolerate plaintiff's use of

11   such a device without accommodation in response to questioning by plaintiff's counsel.  (AT 75.)

12   However, while the record demonstrates that plaintiff was prescribed an oxygen tank and

13   continued to use it throughout the relevant period, (AT 426), this fact is insufficient to undermine

14   the ALJ's step two determination.  Plaintiff testified at the hearing that while he used the oxygen

15   until the tank was picked up in June of 2011, he did so despite feeling better and believing he no

16   longer needed it.  (AT 66.)  Indeed, plaintiff testified that he could do more without the tank, such

17   as mow his lawn, and was able to perform certain tasks, such as lifting, equally as well as when

18   he was using the oxygen tank.  (AT 66-69.)  Plaintiff further testified that he did not request to

19   keep the tank when it was being taken from him and that it was removed from him only because

20   the "county didn't want to pay for it anymore."  (Id.)  While plaintiff stated that he began

21   experiencing coughing episodes and other issues related to his breathing impairment after he was

22   off of the oxygen, such testimony was with regard to a period of time after the one at issue in this

23   action.  Based in part on this testimony, the ALJ reasonably determined that plaintiff's physical

24   impairments "did not meet the 12 month durational requirement[ ] and did not limit his ability to

25   do basic work activities."  AT 19.

26       Furthermore, as discussed above, the medical evidence from the relevant time period does

27   not indicate that plaintiff's medically determinable impairments had more than a minimal impact

28   on plaintiff's ability to perform work-related tasks during that time.  Given plaintiff's testimony

6

1    and the medical evidence in the record, the ALJ reasonably determined that plaintiff's medically

2    determinable impairments did not have more than a minimal impact on plaintiff's ability to

3    perform work-related activities during the relevant time period.  In light of this substantial

4    evidence, the mere fact that the vocational expert testified that many employers would not tolerate

5    the use of an oxygen tank in the workplace does not undermine the ALJ's step two determination.

6    In short, the evidence in the record substantially supported the ALJ's determination at step two

7    that plaintiff's cirrhosis of the liver and COPD were not "severe."

8          Finally, plaintiff also appears to assert that the ALJ should have found that plaintiff had

9    "severe" laryngeal cancer during the relevant time period, despite the fact that it was not

10   diagnosed until January of 2013, because "[i]n retrospect, his medical records establish symptoms

11   of cancer existed prior to March 31, 2011."  (ECF No. 14-1 at 15.)  However, the medical

12   evidence substantially supported the ALJ's determination that plaintiff did not suffer from

13   "severe" laryngeal cancer during the relevant time span.  For instance, on September 19, 2010,

14   Dr. Cehan (an ear, nose, and throat specialist) examined plaintiff's throat and determined that

15   while plaintiff had a "posterior laryngeal commissure warty lesion probably secondary to tobacco

16   use and GER," there was "not sufficient suspicion to warrant a biopsy."  (AT 378, 405.)

17   Similarly, State agency physicians reviewed plaintiff's medical records and determined that they

18   did not support a finding that plaintiff had laryngeal cancer, or another "severe" impairment,

19   during the relevant period.  AT 77-81, 83-89.  Even assuming that some signs of laryngeal cancer

20   were present during the alleged disability period, plaintiff fails to demonstrate any evidence that

21   this condition caused more than a minimal impact on his ability to perform basic work-related

22   functions.  Indeed, the record shows that plaintiff did not receive treatment for this condition until

23   January of 2013, roughly 21 months after the end of the relevant period.  Accordingly, the ALJ's

24   step two determination was without error.

25              2.    *The ALJ Properly Developed the Record*

26          Second, plaintiff argues that the ALJ failed to properly fulfill his duty to develop the

27   record because he did not obtain the testimony of a medical expert to assist in determining

28   plaintiff's disability onset date.  Specifically, plaintiff argues that a medical expert's testimony

1    was required because plaintiff's onset date had to be inferred given the progressive nature of his

2    laryngeal cancer and the fact that, in retrospect, the medical evidence from the relevant period

3    indicates that plaintiff may have exhibited signs and symptoms of laryngeal cancer at that time.

4    Plaintiff contends further that the fact that he was later deemed disabled through a subsequent

5    application under Title XVI of the Act because he met Listing 13.02 E due to his 2013 diagnosis

6    of laryngeal cancer makes a medical expert's testimony regarding plaintiff's onset date and

7    impact of his impairments necessary under Social Security Ruling ("SSR") 96-6p.[4]

8        It is well established that a claimant bears the burden of providing medical and other

9    evidence that support the existence of a medically determinable impairment.  Bowen v. Yuckert,

10    482 U.S. 137, 146 (1987); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998) ("At all times, the

11    burden is on the claimant to establish her entitlement to disability insurance benefits.").  Indeed, it

12    is "not unreasonable to require the claimant, who is in a better position to provide information

13    about his own medical condition, to do so."  Yuckert, 482 U.S. at 146 n.5.

14        Nevertheless, as the Ninth Circuit Court of Appeals has also explained:

15
16
17
18
19
20

> The ALJ in a social security case has an independent duty to fully
> and fairly develop the record and to assure that the claimant's
> interests are considered.  This duty extends to the represented as
> well as to the unrepresented claimant.  When the claimant is
> unrepresented, however, the ALJ must be especially diligent in
> exploring for all the relevant facts ... The ALJ's duty to develop the
> record fully is also heightened where the claimant may be mentally
> ill and thus unable to protect her own interests.  Ambiguous
> evidence, or the ALJ's own finding that the record is inadequate to
> allow for proper evaluation of the evidence, triggers the ALJ's duty
> to conduct an appropriate inquiry.

21    Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and quotation marks

22

23    [4] SSR 96-6p provides, in pertinent part:

24
25

> [A]n administrative law judge and the Appeals Council must obtain an updated
> medical opinion from a medical expert in the following circumstances: . . .

26
27
28

> When additional medical evidence is received that in the opinion of
> the administrative law judge or the Appeals Council may change
> the State agency medical or psychological consultant's finding that
> the impairment(s) is not equivalent in severity to any impairment in
> the Listing of Impairments.

1    omitted).  In short, "[a]n ALJ's duty to develop the record further is triggered only when there is

2    ambiguous evidence or when the record is inadequate to allow for proper evaluation of the

3    evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing Tonapetyan, 242

4    F.3d at 1150.).  Furthermore, an ALJ must call upon a medical expert to assist in determining a

5    claimant's disability onset date when the record is ambiguous as to that date.  Armstrong v.

6    Comm'r of Soc. Sec. Admin., 160 F.3d 587, 590 (9th Cir. 1998).

7        "The ALJ may discharge this duty in several ways, including:  subpoenaing the claimant's

8    physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping

9    the record open after the hearing to allow supplementation of the record." Id.  However, as some

10   courts have persuasively observed, the ALJ "does not have to exhaust every possible line of

11   inquiry in an attempt to pursue every potential line of questioning.  The standard is one of

12   reasonable good judgment." Hawkins v. Chater, 113 F.3d 1162, 1168 (10th Cir. 1997) (citation

13   omitted).

14       Here, plaintiff fails to show how the record was ambiguous as to whether the date on

15   which his laryngeal cancer became totally disabling fell prior to or within the period relevant to

16   the present action.  Indeed, the only medical evidence from plaintiff's treating physicians

17   regarding this condition during the relevant period demonstrates that plaintiff's physicians ruled

18   out the possibility that plaintiff had laryngeal cancer at that time.  (AT 363 (noting abnormal

19   imaging of the esophagus in 2010, but stating "I highly doubt this is esophageal cancer"), 405

20   (noting the following on September 16, 2010:  "Posterior laryngeal commissure warty lesion

21   probably secondary to both tobacco use and GER.  There is not sufficient suspicion for cancer to

22   warrant biopsy at this time.")).  Furthermore, two State agency non-examining physicians

23   reviewed plaintiff's medical records and similarly opined that plaintiff did not have laryngeal

24   cancer during the relevant time period.[5]  AT 77-81, 83-89.  Plaintiff argues the fact that plaintiff's

25   [5] Plaintiff argues that the State agency non-examining physicians in this case did not constitute
26   "medical experts" for purposes of fulfilling the ALJ's duty to develop the record because SSR 83-
     20 requires such testimony to be made at the hearing.  Plaintiff also argues that these physicians
27   were not otherwise qualified to review the record concerning plaintiff's cancer because both
     physicians were general practitioners, not experts in the field of cancer.  While the court agrees
28   that the opinions of these two physicians do not meet the testimony requirements of SSR 83-20,

cancer was at stage four when it was diagnosed in 2013 means that it is possible that the medical records from the relevant time period ruling out cancer were incorrect, thus making plaintiff's onset date for that impairment ambiguous.  However, none of the records from plaintiff's physicians from the time after plaintiff's initial diagnosis of laryngeal cancer indicate that plaintiff's cancer onset date occurred prior to or during the period relevant to the application at issue.  Even after plaintiff was diagnosed with cancer, none of his physicians opined or otherwise noted that the cancer could have been present during the relevant period.  Because the medical evidence in the record was not ambiguous as to whether the onset date of plaintiff's laryngeal cancer fell within or prior to the time period at issue, the ALJ was not required to obtain the testimony of a medical expert in order to fulfill his duty to develop the record.

Similarly, plaintiff fails to demonstrate how the additional medical evidence the ALJ received might have changed the State agency consulting physicians' findings that plaintiff did not have an impairment that met or equaled Listing 13.02E, the listing under which plaintiff was found disabled in 2013 based on the diagnosis and severity of his laryngeal cancer at that later time.  Under Listing 13.02E, a claimant is considered disabled until at least 18 months after the date of diagnosis of a soft tissue cancer originating in the head and neck that is "treated with multimodal anticancer therapy."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 13.02E.  Here, the medical record from the relevant period clearly indicates that plaintiff's physicians had ruled out the existence of laryngeal cancer at that time.  Moreover, there is no evidence in the record that plaintiff was receiving multimodal anticancer therapy for laryngeal cancer at any time prior to his first diagnosis of that impairment in early 2013.  The evidence plaintiff submitted to the ALJ after the administrative hearing does not change this fact.  Accordingly, such evidence was insufficient to trigger the ALJ's duty under SSR 96-6p to obtain testimony from a medical expert to

the mere fact that they were general practitioners rather than cancer specialists does not diminish the probative weight of their opinions.  See SSR 96-6p ("Because State agency medical and psychological consultants and other program physicians and psychologists are experts in the Social Security disability programs, the rules in 20 CFR 404.1527(f) and 416.927(f) require administrative law judges and the Appeals Council to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists.").

1    determine whether the new evidence undermined the State agency physicians' determination that

2    plaintiff's impairments did not meet or equal a listing.

3         3.    *The ALJ Properly Assessed the Credibility of Plaintiff's Testimony*

4         Finally, plaintiff argues that the ALJ erred in determining that plaintiff's testimony

5    regarding the degree of his pain and limitations during the relevant period was not entirely

6    credible.

7         In <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of

8    Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

9
          To determine whether a claimant's testimony regarding subjective
10        pain or symptoms is credible, an ALJ must engage in a two-step
          analysis.  First, the ALJ must determine whether the claimant has
11        presented objective medical evidence of an underlying impairment
          which could reasonably be expected to produce the pain or other
12        symptoms alleged.  The claimant, however, need not show that her
          impairment could reasonably be expected to cause the severity of
13        the symptom she has alleged; she need only show that it could
          reasonably have caused some degree of the symptom.  Thus, the
14        ALJ may not reject subjective symptom testimony . . . simply
          because there is no showing that the impairment can reasonably
15        produce the degree of symptom alleged.

16        Second, if the claimant meets this first test, and there is no evidence
          of malingering, the ALJ can reject the claimant's testimony about
17        the severity of her symptoms only by offering specific, clear and
          convincing reasons for doing so. . . .

18    <u>Lingenfelter</u>, 504 F.3d at 1035-36 (citations and quotation marks omitted).  "At the same time, the

19    ALJ is not required to believe every allegation of disabling pain, or else disability benefits would

20    be available for the asking . . ."  <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012).

21        "The ALJ must specifically identify what testimony is credible and what testimony

22    undermines the claimant's complaints."  <u>Valentine v. Comm'r of Soc. Sec. Admin.</u>, 574 F.3d 685,

23    693 (9th Cir. 2009) (<u>quoting</u> <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir.

24    1999)).  In weighing a claimant's credibility, an ALJ may consider, among other things, the

25    "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or

26    between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and

27    testimony from physicians and third parties concerning the nature, severity, and effect of the

28    symptoms of which [claimant] complains.'"  <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir.

1   2002) (modification in original) (quoting <u>Light v. Soc. Sec. Admin.</u>, 119 F.3d 789, 792 (9th Cir.

2   1997)).  If the ALJ's credibility finding is supported by substantial evidence in the record, the

3   court "may not engage in second-guessing."  <u>Id.</u> at 959.

4        Here, in determining that plaintiff's testimony concerning the extent of his impairments

5   was not fully credible, the ALJ reasoned as follows:

6

7        The claimant alleges that his physical impairments have worsened, however, the
     minimal and sporadic medical treatment records show that his condition is not as

8        debilitating as he claims.  The pertinent time period to evaluate claimant['s]
     allegation is from his alleged onset date of May 01, 2010, through his date last

9        insured of March 31, 2011.  A review of the Chapa-De Indian Health Program
     medical records pertaining to claimant's physical impairments during that time

10       period are minimal and sporadic, consist of three visits in 2010, and inconsistent
     with his allegations of worsening of his cirrhosis and COPD.

11

12  AT 18-19.  After providing this reasoning, the ALJ proceeded to provide examples from the

13  record supporting this reasoning.  (AT 19.)  Specifically, the ALJ cited to three medical records

14  from plaintiff's treating physicians at the Chapa-De Indian Health Program and an alleged

15  coughing incident that plaintiff testified to at the hearing.  (<u>Id.</u>)

16       Plaintiff argues that the ALJ's sole reason in support of his adverse credibility

17  determination was that plaintiff's testimony regarding the extent of limitation caused by his

18  impairments was not corroborated by the objective medical evidence in the record, which was an

19  insufficient basis for finding plaintiff's testimony less than fully credible.  While plaintiff is

20  correct that a lack of medical evidence supporting a plaintiff's subjective symptom testimony is,

21  by itself, insufficient to warrant an adverse credibility determination, it is nevertheless a relevant

22  factor for the ALJ to consider.  <u>Burch v. Barnhart</u>, 400 F.3d 676, 680-81 (9th Cir. 2005).

23  Furthermore, the ALJ here did not rely solely on the lack of medical evidence in making his

24  adverse credibility determination.  Indeed, the ALJ's discussion of plaintiff's credibility in his

25  decision demonstrates that he also relied on the fact that the record shows that plaintiff sought

26  only sporadic treatment despite his allegations that his impairments worsened, and did not report

27  to his treating physicians or seek treatment for an alleged series of coughing incidents that

28

1   allegedly caused him to lose consciousness on multiple occasions just after the end of the relevant

2   period.  (See AT 19.)

3         Failure to seek consistent treatment is a proper consideration when evaluating credibility.

4   See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).  "We have long held that, in assessing

5   a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained

6   failure to seek treatment or to follow a prescribed course of treatment . . . Moreover, a claimant's

7   failure to assert a good reason for not seeking treatment, or a finding by the ALJ that the proffered

8   reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony."

9   Molina, 674 F.3d at 1113-14 (citation and quotation marks omitted).

10        Here, the ALJ cited to the fact that plaintiff did not seek treatment for or even report his

11  multiple alleged severe coughing episodes to his treating physicians in support of the ALJ's

12  determination that plaintiff was less than fully credible.  AT 19.  While these episodes allegedly

13  occurred a few months after the relevant period, they still reflected on plaintiff's credibility due to

14  plaintiff's unexplained failure to seek treatment or even report the episodes despite the fact that

15  plaintiff testified at the hearing that they were so severe as to cause him to lose consciousness and

16  interfere with his daily activities.  (See AT 70-71.)   The ALJ was permitted to rely on this failure

17  to seek treatment to determine that plaintiff's allegations regarding the severity of his symptoms

18  were exaggerated.  Molina, 674 F.3d at 1113-14.

19         Furthermore, the ALJ also cited to the fact that plaintiff's medical records from the

20  relevant period did not corroborate the degree to which plaintiff testified his impairments limited

21  his ability to perform work.  Because the ALJ also gave other reasons for discounting plaintiff's

22  testimony, his further reliance on such evidence in support of that determination was proper.

23  Burch, 400 F.3d at 681.  In addition, the ALJ's reasoning was supported by substantial evidence.

24  Indeed, as discussed above, the objective medical records from the relevant period constituted

25  substantial evidence in support of the ALJ's finding that plaintiff's impairments did not impose

26  more than minimal limitations on plaintiff's ability to perform basic work-related functions at

27  step two.  Likewise, such evidence also supported the ALJ's adverse credibility determination

28  because it was inherently at odds with plaintiff's claim that his impairments were so limiting as to

1   render him fully disabled during the relevant time period.

2        In short, the ALJ provided clear and convincing reasons for discounting plaintiff's

3   testimony regarding the degree of limitation caused by his impairments that were supported by

4   substantial evidence from the record.  The ALJ's adverse credibility determination was without

5   error.

6   V.   <u>CONCLUSION</u>

7        For the foregoing reasons, IT IS HEREBY ORDERED that:

8        1.  Plaintiff's motion for summary judgment (ECF No. 14) is DENIED.

9        2.  The Commissioner's cross-motion for summary judgment (ECF No. 15) is

10  GRANTED.

11       3.  Judgment is entered for the Commissioner.

12       4.  The Clerk of Court is directed to close this case and vacate all dates.

13       IT IS SO ORDERED.

14  Dated:  September 16, 2015

15

16                              KENDALL J. NEWMAN
                                UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28